Argued and submitted July 30, ballot title certified as modified August 22, 1996

Clyde V. BRUMMELL
and Henry Kane,
*Petitioners,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S43415)

Phil BOGUE
and Mike Burton,
*Petitioners,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S43417)

Don McINTIRE,
*Petitioner,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S43421)
(Cases Consolidated for Argument and Opinion)

921 P2d 388

Clyde V. Brummell and Henry Kane, petitioners *pro se*, filed the petition. Mr. Kane argued the cause.

Christopher P. Thomas, Portland, argued the cause and filed the petition for petitioners Phil Bogue and Mike Burton.

Gregory W. Byrne, Portland, argued the cause and filed the petition for petitioner Don McIntire.

Stephanie L. Striffler, Assistant Attorney General, Salem, argued the cause for respondent. With her on the answering memoranda were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

CARSON, C. J.

**CARSON, C. J.**

This case involves three original ballot title proceedings, which we consolidated for argument and opinion. In each proceeding, a separate petitioner or group of petitioners challenges the ballot title for House Bill 3480, which the 1996 legislature passed during a special session. Or Laws 1996, ch 14 (Spec Sess). The bill has been referred to the voters pursuant to Article IV, section 1(3)(b), of the Oregon Constitution. Each petitioner is an elector who submitted written comments about the Attorney General's draft ballot title in a timely manner. ORS 250.067(1). Consequently, each petitioner is entitled to seek a different title in this court. ORS 250.085(2). We have considered each of petitioners' arguments concerning the Attorney General's certified ballot title and have concluded that all segments of the ballot title require modification. Accordingly, we modify the ballot title, in order to substantially comply with the requirements of ORS 250.035(2). *See* ORS 250.085(5) (establishing this court's standard of review of ballot titles).

We first summarize the significant parts of House Bill 3480. The bill establishes and provides for the funding of two new transportation-related accounts, the "South North Construction Fund" and the "Transportation Equity Account." Or Laws 1996, ch 14, §§ 3 and 12 (Spec Sess). The purpose of the South North Construction Fund is to provide the state's portion of the funding for the first construction segment of the "South North Line," a light rail project in the Portland Tri-Met region.[1] The purpose of the Transportation Equity Account is to provide funding for future "essential transportation projects" throughout the state, in all counties other than the three Tri-Met counties. The bill provides that each of those remaining 33 counties, as well as cities in those counties, will receive a proportional distribution from the Transportation Equity Account.[2] Or Laws 1996, ch 14, § 17 (Spec Sess).

---

[1] The "Portland Tri-Met region" refers to Multnomah, Washington, and Clackamas counties. The South North Line is proposed to run from Clackamas County to Clark County, Washington. "Tri-Met" refers to the Tri-County Metropolitan Transportation District of Oregon.

[2] Sixty percent of the funds in the Transportation Equity Account will be distributed to the 33 counties in proportion to the number of vehicles and trailers

According to House Bill 3480, the South North Construction Fund and the Transportation Equity Account will be funded to a level of $375 million each. Or Laws 1996, ch 14, §§ 3(2) and 13(4) (Spec Sess). In order to fund the accounts, the bill first provides that the state may issue lottery revenue bonds in an aggregate amount not to exceed $490 million, plus issuing and administrative costs, necessary reserves, and the cost of bond insurance or other credit-related devices. Or Laws 1996, ch 14, § 7(1) (Spec Sess). Of that $490 million, the bill allocates $375 million to the South North Construction Fund and $115 million to the Transportation Equity Account. Or Laws 1996, ch 14, §§ 3(2), 6(2)(c), 6(3), and 12(3) (Spec Sess).

As a result of that allocation, the sale of lottery bonds will fully fund the South North Construction Fund. However, the bonds will fund the Transportation Equity Account only partially at $115 million. Consequently, House Bill 3480 further provides that the remaining balance of the Transportation Equity Account, $260 million, will be funded by the following sources: (1) estimated state income tax revenues to be collected from income generated by the South North line, which will be appropriated from the state's general fund, Or Laws 1996, ch 14, §§ 13(1) and (3) (Spec Sess); (2) federal transportation funds that otherwise would be distributed to the Tri-County Metropolitan Transportation District of Oregon (Tri-Met), Or Laws 1996, ch 14, § 14(1)(a) (Spec Sess); (3) lottery funds redistributed from local governments, Or Laws 1996, ch 14, § 14(1)(b) (Spec Sess); (4) other funds potentially to be paid to Tri-Met, subject to future legislation, Or Laws 1996, ch 14, § 16(4) (Spec Sess); and (5) the general fund, if necessary, Or Laws 1996, ch 14, § 13(4) (Spec Sess).

House Bill 3480 also provides that the lottery bonds shall not be issued "unless, on or before the date of issuance of the bonds, federal matching funds have been made available for the first construction segment of the South North Line light rail project." Or Laws 1996, ch 14, § 8 (Spec Sess). In

---

registered in each county. Forty percent of the funds will be distributed to cities in those counties in proportion to population. Or Laws 1996, ch 14, § 17 (Spec Sess).

addition, the bill provides that the state shall repay the lottery bonds, if issued, using "unobligated net lottery proceeds" and other appropriated and invested funds. Or Laws 1996, ch 14, §§ 5, 6, and 7(5) (Spec Sess). "Unobligated net lottery proceeds" generally include all lottery proceeds that are not already obligated, by other statutory or constitutional provisions, to some other state fund or expense. Or Laws 1996, ch 14, § 2(14) (Spec Sess).

Finally, House Bill 3480 also contains several additional provisions, including legislative findings, definitions, and provisions to establish a Light Rail Oversight Committee.

■ As noted, the 1996 legislature passed House Bill 3480 during a special session. The Governor approved the bill on March 4, 1996, and the bill would have become effective on May 3, 1996. However, before that effective date, several electors filed a referendum petition with the Secretary of State that contained the number of signatures required to refer the bill to the voters at the next general election. Or Const, Art IV, § 1(3)(b). Because House Bill 3480 is now the subject of a referendum, the Attorney General prepared a proposed ballot title. ORS 250.065(4). After receiving and considering several comments, pursuant to ORS 250.067(1), the Attorney General revised the draft ballot title and certified the following ballot title for House Bill 3480:

"AUTHORIZES BONDS FOR PORTLAND AREA LIGHT RAIL, TRANSPORTATION PROJECTS ELSEWHERE

"RESULT OF 'YES' VOTE:   'Yes' vote authorizes lottery bonds for Portland area light rail, transportation projects outside Portland area.

"RESULT OF 'NO' VOTE:   'No' vote rejects lottery bonds for Portland area light rail, transportation projects outside Portland area.

"SUMMARY:   Measure permits state to issue lottery revenue bonds to fund $375 million of state's share of cost to build Tri-Met Portland area 'South North light rail,' and to fund $115 million of $375 million 'Transportation Equity

Account.' Establishes 'Transportation Equity Account,' payable to cities and counties for transportation projects outside Portland region, funded by lottery bonds, general fund, and other sources. Unobligated net revenues from lottery repay bonds. Bonds cannot be sold unless federal light rail matching funds become available. Other provisions."

We now turn to the specific challenges to the Attorney General's certified ballot title raised by petitioners. We first address the objections of petitioners Brummell and Kane and petitioner McIntire,[3] followed by the objections of petitioners Bogue and Burton.

Petitioners Brummell and Kane are electors who made timely objections to the Attorney General's draft ballot title. Petitioner McIntire is one of the chief petitioners who filed the referendum petition for House Bill 3480; he also made timely objections to the draft ballot title. All three petitioners challenge all segments of the Attorney General's certified ballot title. We address their objections in turn.

Petitioners Brummell and Kane first object to the caption of the certified ballot title because it does not state that House Bill 3480 authorizes a minimum bond issue of $490 million and also does not state that more than $490 million in bonds may be issued under the bill, to cover administrative costs and reserves.[4] As we shall explain, we conclude that that objection is not well taken.

---

[3] Because petitioners Brummell and Kane and petitioner McIntire raise similar challenges to the certified ballot title, we address their challenges together.

[4] Oregon Laws 1996, chapter 14, section 7(1) (Special Session) provides, in part:

"For the purpose of financing grants authorized by section 3 of this Act [the South North Construction Fund] and funding of the Transportation Equity Account * * *, South North lottery bonds may be issued from time to time in one or more series in an aggregate amount not to exceed:

"(a) The principal sum of $490 million; *plus*

"(b) An amount equal to the costs incurred in connection with the issuance of the South North lottery bonds and other administrative expenses of the State Treasurer and the department in connection with the issuance of the South North lottery bonds; *plus*

"(c) The amount of any reserves determined to be necessary or advantageous in connection with the South North lottery bonds; *plus*

"(d) The amount needed to pay for the cost of acquiring any municipal bond insurance policy, letter of credit, line of credit, surety bond or other credit enhancement device obtained for the purpose of providing additional security or liquidity for the South North lottery bonds." (Emphasis added.)

The caption of a ballot title is limited to 10 words and must "reasonably identif[y] the subject of the measure." ORS 250.035(2)(a). The subject of House Bill 3480 is the establishment of a funding program for the South North Line and other essential transportation projects outside the Portland Tri-Met region. The minimum amount of the bond issue, $490 million, and the authorization of additional amounts exceeding $490 million are details that are not essential to a 10-word summary of the subject of the bill. Consequently, the caption need not include those items.

Petitioners Brummell and Kane next contend that the caption is misleading when it refers to "transportation projects elsewhere" and, instead, should specifically state the location of those projects. We disagree for the same reasons stated above: It is not necessary to mention the location of the other transportation projects in order to summarize the subject of the bill.

Finally, petitioners Brummell and Kane contend that the caption is defective because it does not state that, in order to fund the Transportation Equity Account, House Bill 3480 authorizes the spending of other funds, including potential distributions from the general fund, in addition to authorizing the $490 million minimum bond issue. Petitioner McIntire also makes that argument and further contends that the caption is grossly misleading because it fails to state that a substantial portion of the Transportation Equity Account will be funded using income tax revenues, not lottery proceeds.

Petitioners are correct that, of the $750 million in transportation funding authorized by House Bill 3480, approximately one-third of that total—$260 million in the Transportation Equity Account—will come not from the lottery bonds, but from other sources, such as estimated state income tax revenues generated by the South North Line, federal transportation funds and other future funds appropriated from Tri-Met, lottery funds redistributed from local governments, and, if necessary, the general fund. Consequently, by providing that the bill "authorizes bonds for Portland area light rail, transportation projects elsewhere," the Attorney

General's caption fails to mention that additional authorized spending.

However, it is significant to note that, in drafting House Bill 3480, the legislature specifically provided that "the purpose of [the substantive portions] of this Act is to establish a state revenue bond program to provide the state's share of the cost of the South North Line." Or Laws 1996, ch 14, § 1(2) (Spec Sess). In view of that statement of legislative purpose, and given the constraints of ORS 250.035(2)(a), we conclude that the Attorney General's caption substantially complies with the requirement that the caption reasonably identify the subject of the measure, despite the caption's failure to mention the additional authorized spending of $260 million in the bill.

■ Petitioners Brummell and Kane and petitioner McIntire next challenge both the " 'yes' vote" and " 'no' vote" result statements in the Attorney General's certified ballot title. The result statements serve to describe the result if the measure is approved or rejected by the voters. ORS 250.035(2)(b) and (c). All three petitioners again argue that the result statements are misleading because those statements do not specify that House Bill 3480 authorizes $260 million in spending, in addition to the $490 million minimum bond issue, some of which may come from the state's general fund. We reject that argument for the same reasons discussed above and need not elaborate further.

Petitioners Brummell and Kane and petitioner McIntire also challenge the summary in the Attorney General's certified ballot title. According to ORS 250.035(2)(d), a ballot title must contain "[a] concise and impartial statement of not more than 85 words summarizing the measure and its major effect." As we shall explain, we conclude that two of the arguments presented by petitioners Brummell and Kane are well taken.

■ Petitioners Brummell and Kane first contend, as they did in challenging the caption, that the first sentence of the summary is misleading because it fails to state that House Bill 3480 provides that more than $490 million in bonds may be issued, in order to cover various administrative

costs and reserves. *See* 324 Or at 48 and n 4 (discussing petitioners' objection to the caption and quoting the bond issue provisions in the bill). Although we have concluded that the caption need not mention the details of the bond issue, we agree with petitioners Brummell and Kane that the summary should advise the voters that House Bill 3480 authorizes the issuance of bonds exceeding $490 million. Consequently, we shall modify the summary to reflect that provision of the bill.

■    Petitioners Brummell and Kane also contend that the first sentence of the summary is misleading because it fails to include the total principle amount of the bond issue, $490 million. They further contend that the summary is vague and confusing when it states that the lottery bonds will fund "$115 million of $375 million 'Transportation Equity Account.' " We agree that the first sentence of the summary should more clearly state that the lottery bonds will provide funding for *both* the South North Construction Fund *and* the Transportation Equity Account, and that $260 million of the Transportation Equity Account will be funded by sources other than the lottery bonds. Accordingly, we shall modify the summary in order to make those clarifications. We reject petitioners' other challenges to the first sentence of the summary.

■    Turning to the second sentence of the summary, petitioners Brummell and Kane next contend that that sentence *specifically* should identify the funding sources for the Transportation Equity Account. Petitioner McIntire also challenges the summary for that reason and further contends that the term "general fund" is improperly "buried in the text" of the second sentence. We disagree with the three petitioners that, within the constraints imposed by ORS 250.035(2)(d), the summary inadequately identifies the funding sources for the Transportation Equity Account. *See* 324 Or at 46 (discussing those funding sources). We also reject petitioner McIntire's argument that the term "general fund" should be moved to a more prominent place in the summary. When compared to the creation in House Bill 3480 of the lottery bond program, the provision concerning the potential

but presently uncertain requirements for general fund contributions to the Transportation Equity Account is of secondary importance, and, accordingly, its placement in the summary is appropriate.

■ Petitioners Brummell and Kane next contend that the summary is repetitious because it uses the term "Transportation Equity Account" twice, "prevent[ing] inclusion of important information within the 85-word summary limit." In our view, in order to best convey sufficient information concerning the Transportation Equity Account, use of that term twice in the summary is most informative. Accordingly, we reject petitioners' contention.

■ Finally, petitioners Brummell and Kane contend that the summary is incomplete and misleading "because it does not disclose that the state's General Fund faces exposure to bond repayment if lottery revenue proves insufficient." We acknowledge that two of the sections of House Bill 3480 cited by petitioners provide that the lottery bonds may be repaid from sources other than unobligated net lottery proceeds, which may include contributions from the general fund.[5] However, it is clear upon reviewing the entire bill that

---

[5] Oregon Laws 1996, chapter 14, section 7(5) (Special Session) provides, in part:

"All light rail lottery bonds issued under this section shall be payable from:

"(a) The unobligated net lottery proceeds pledged thereto as provided in subsection (7) of this section;

"(b) *Any appropriated funds*; and

"(c) The moneys and investments on deposit from time to time in the Light Rail Bond Fund and any reserve account established as additional security for the light rail lottery bonds." (Emphasis added.)

Oregon Laws 1996, chapter 14, section 7(8)(b) (Special Session) provides:

"The State of Oregon hereby makes the covenants set forth in paragraphs (a) to (d) of this subsection with and for the benefit of the owners from time to time of the light rail lottery bonds. The covenants shall constitute a contract with such owners:

"* * * * *

"(b) Subject only to the availability of unobligated net lottery proceeds, the state shall budget and appropriate in each fiscal year an amount of unobligated net lottery proceeds that, when added to other funds lawfully budgeted and appropriated and available for such purpose, will be sufficient to pay in full the principal and interest due and to become due in such fiscal year on all outstanding light rail lottery bonds * * *, and will apply the unobligated net

the state lottery will provide the primary source of revenue to repay the bonds and that potential contributions from the general fund will be minor in comparison. Consequently, we conclude that the summary sufficiently describes the effect of the bill without discussing potential bond repayment from the general fund.

We now turn to the challenges to the Attorney General's certified ballot title brought by petitioners Bogue and Burton. Both petitioners are proponents of House Bill 3480 and also are electors who made certain timely objections to the Attorney General's draft ballot title.

■     At the outset, we note that, in their petition to this court, petitioners Bogue and Burton challenge all segments of the certified ballot title for House Bill 3480. However, in their earlier written comments to the Attorney General, offered during the statutory comment period, both petitioners limited their challenges to the summary of the draft ballot title only and essentially conceded that the caption and result statements complied with the statutory requirements of ORS 250.035(2)(a), (b), and (c). Accordingly, we address only the objections to the summary presented by petitioners Bogue and Burton. *See* ORS 250.085(6) (stating that, when reviewing a ballot title, "the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State," with exceptions that do not apply here). As we shall explain, we conclude that only one of petitioners' contentions is well taken.

Petitioners Bogue and Burton first contend that the order of presentation in the summary is "illogical and confusing" because the summary "fails to separate its description of the South North portion of the measure from its description of the Transportation Equity Account portion." We acknowledge that the length and complexity of House Bill 3480 does not necessarily lend itself to an easily understood, logical summary. In our view, however, the Attorney General's summary and the modifications previously discussed in this opinion sufficiently describe the most significant portions of the

---

lottery proceeds *and any other amounts so budgeted and appropriated* to the payment of such principal and interest when due * * *[.]" (Emphasis added.)

bill, in substantial compliance with the statutory require-ments of ORS 250.035(2)(d).

■ Petitioners Bogue and Burton next object to the third sentence of the summary, which states that "[u]nobligated net revenues from lottery repay bonds." According to peti-tioners, that sentence "is meaningless to the average voter, is awkwardly worded, and is not needed to summarize the measure and its major effect." We reject petitioners' conten-tion because House Bill 3480 specifically defines the term "unobligated net lottery proceeds" and uses that term repeat-edly.[6] In our view, however, it is preferable for the summary to track the wording of the bill, and, consequently, we shall modify the summary by changing the term "unobligated net revenues" to "unobligated net lottery proceeds." We decline to delete the third sentence of the summary, as petitioners sug-gest, because that sentence is necessary in order to explain to the voters how the state will repay the lottery bonds, if the sale of those bonds is approved.

■ Petitioners Bogue and Burton finally contend that the summary should include the following sentence: "Meas-ure does not approve any new taxes." Petitioners assert that that statement "is essential to the voter's understanding [of] the measure and its major effect." We disagree. Such a sen-tence would not advance the voters' understanding of the bill itself; rather, the sentence would tell the voters what the bill does *not* do. Similarly, the lack of new taxes is not an "effect" of House Bill 3480. In short, the suggested addition is not rel-evant to a summary of the bill and its major effect, as

---

[6] Oregon Laws 1996, chapter 14, section 2(14) (Special Session) provides:

" 'Unobligated net lottery proceeds' means all revenues derived from the operation of the state lottery except for:

"(a) The revenues used for the payment of prizes and the expenses of the state lottery as provided in section 4(4)(e), Article XV[,] of the Oregon Consti-tution, ORS 461.500(2) and 461.510(3) and (4);

"(b) The revenues required to be applied, distributed or allocated as pro-vided in ORS 461.543; and

"(c) The revenues allocated to the Regional Light Rail Extension Con-struction Fund pursuant to ORS 391.140 that are required under ORS 391.125(1) to be transferred to the Regional Light Rail Extension Bond Account for the purpose of paying when due the principal of and interest on the Westside lottery bonds."

required by ORS 250.035(2)(d), and, consequently, we do not make that addition.

Finally, we also observe that, at oral argument, the parties noted that the Attorney General's certified ballot title uses both the words "area" and "region" to describe the same geographical location. Because House Bill 3480 uses the term "Portland metropolitan *region*" (emphasis added) to describe the geographical location of the South North Line, we shall modify the caption, the result statements, and the summary, in order to change the word "area" to "region."

We modify the ballot title certified to the Secretary of State by the Attorney General, and we certify to the Secretary of State the following ballot title:

AUTHORIZES BONDS FOR PORTLAND REGION LIGHT RAIL, TRANSPORTATION PROJECTS ELSEWHERE

RESULT OF "YES" VOTE: "Yes" vote authorizes lottery bonds for Portland region light rail, transportation projects outside Portland region.

RESULT OF "NO" VOTE: "No" vote rejects lottery bonds for Portland region light rail, transportation projects outside Portland region.

SUMMARY: Permits state to issue lottery revenue bonds to fund the following, plus costs and reserves: (1) $375 million of state's share of cost to build Portland region "South North light rail"; and (2) $115 million of separate $375 million "Transportation Equity Account," payable to cities and counties for transportation projects outside Portland region. $260 million of Transportation Equity Account funded by general fund and other sources. Unobligated net lottery proceeds repay bonds. Bonds cannot be sold unless federal light rail matching funds available. Other provisions.

Ballot title certified as modified. Pursuant to ORAP 1.20(4) and notwithstanding ORAP 11.30(10), this opinion will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment at 12:00 noon on August 26, 1996, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by that time. A

timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration.